UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | ) | Chapter 11 Case |
| In re: | ) | |
| | ) | No. 02-41729 (REG) |
| ADELPHIA COMMUNICATIONS CORP, *et. al.*, | ) | |
| a Delaware corporation, | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |
| | ) | |
| ADELPHIA RECOVERY TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FPL GROUP, INC., *et. al.*, | ) | Adversary Proceeding |
| | ) | No. 04-03295 (REG) |
| Defendants. | ) | |
| | ) | |

DECISION AND ORDER ON DEFENDANTS' MOTION
FOR LEAVE TO FILE AMENDED ANSWER

APPEARANCES:

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
*Counsel to the Adelphia Recovery Trust*
1633 Broadway
New York, New York 10019
By:    David M. Friedman, Esq. (argued)
      Joseph A. Gershman, Esq.
      Michael C. Harwood, Esq.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
*Attorneys for Defendants FPL Group, Inc. and West Boca Security, Inc.*
Four Times Square
New York, New York 10036
By:    George A. Zimmerman, Esq. (argued)
      Jessica Barcus, Esq.

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

In this adversary proceeding under the umbrella of the jointly administered cases of

Adelphia Communications Corporation and its subsidiaries ("**Adelphia**" or the "**Debtors**"),

Plaintiff Adelphia Recovery Trust (the "**Trust**") seeks to recover from Defendants FPL Group,

Inc. ("**FPL Parent**") and West Boca Security, Inc. ("**West Boca Security**," and collectively,

"**FPL Group**") an alleged constructive fraudulent transfer arising out of Adelphia's January

1999 repurchase of its stock, in a private transaction, for approximately $149 million.  FPL

Group moves for leave to amend its earlier answer, filed by FPL Group's predecessor counsel, to

raise an additional defense to the Trust's claims—that the transaction is subject to section 546(e)

of the Bankruptcy Code[1] which provides a "safe harbor" defense (as the context requires, the

"**Section 546 Safe Harbor**," or "**Safe Harbor Defense**") to transactions where avoidance could

upset trading markets[2]—or, in the view of a fair amount but considerably less than all of the

analysis on point, irrespective of the effect on trading markets, where the literal text of the

statutory language would exempt the transaction from the normal requirements of the

Bankruptcy Code and bankruptcy policy.

The issue here does not, however, turn on the merits of the asserted Safe Harbor Defense.

Rather, it turns on consideration of the Federal Rules of Civil Procedure—and requires a

---

[1]    Section 546(e) provides, in relevant part, that a trustee may not avoid a transfer as a constructively fraudulent transfer that is a "settlement payment . . . made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency . . . in connection with a securities contract," which is defined in pertinent part as "a contract for the purchase [or] sale . . . of a security."

[2]    *See Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, --- F.3d ---, 2011 U.S. App. LEXIS 13177, at *13-14, 2011 WL 2536101, at *5 (2d Cir. Jun. 28, 2011) ("***Enron***") ("Congress enacted § 546(e)'s safe harbor in 1982 as a means of 'minimiz[ing] the displacement caused in the commodities and securities markets in the event of a major bankruptcy affecting those industries.' . . . If a firm is required to repay amounts received in settled securities transactions, it could have insufficient capital or liquidity to meet its current securities trading obligations, placing other market participants and the securities markets themselves at risk." (quoting *Kaiser Steel Corp. v. Charles Schwab & Co., Inc.,* 913 F.2d 846, 849 (10th Cir. 1990)) (citations omitted)).

1

discretionary determination under two Rules of Civil Procedure that tend to cut in different directions where, as here, the time for amending pleadings has come and gone under an earlier scheduling order.  Fed. R. Civ. P. 15(a) provides that "the court should freely give leave when justice so requires," and Rule 15(a) caselaw focuses heavily on the prejudice to the nonmoving party.  But Fed. R. Civ. P. 16(b) provides that scheduling orders may be modified only for "good cause," and Rule 16(b) caselaw requires a showing of diligence.

Here there would be no more than modest prejudice to the Trust if the Court were to grant the requested leave to amend—principally, the loss of the ability to sidestep judicial consideration of the Safe Harbor Defense on procedural grounds.  But the request for leave to amend here is grossly untimely under the Court's earlier scheduling orders—*four years* after the deadline.  And it appears here that the late request arises not by reason of ignorance of the potential defense, but because FPL Group's predecessor counsel thought it could lie back and raise the Safe Harbor Defense whenever it chose to—a tactic that the Court finds to be debatable in its legal reasoning, and offensive in its gamesmanship.

The Court finds that here FPL Group has not come close to showing good cause for the delay.  FPL Group's delay here, with respect to an arguable defense of which it was always aware, was very troublesome in its duration and even more so in its lack of justification.  And the Court does not believe that it should be rewarding failures to honor scheduling orders where those failures arise from tactical choices.

Accordingly, the motion is denied.  The bases for the Court's exercise of its discretion follow.

Facts

This adversary proceeding was filed on June 24, 2004, originally by Debtor Adelphia

Communications Corporation and its Official Committee of Unsecured Creditors,[3] seeking to

avoid a constructive fraudulent conveyance pursuant to sections 544(b) and 550 of the

Bankruptcy Code.  The Trust's complaint alleged, among other things, that Adelphia

repurchased its stock from Mayberry Investments, Inc. ("**Mayberry Investments**") (an FPL

Parent subsidiary that later was merged into defendant West Boca Security and dissolved), for

$149 million in cash.  It was further alleged that the funds Adelphia paid to Mayberry

Investments were subsequently transferred to FPL Parent and/or West Boca Security.

FPL Group, then represented by a predecessor law firm ("**Predecessor Counsel**"), filed

its answer on October 19, 2004.  That answer did not raise a Safe Harbor Defense.  After the

parties met and conferred, the Court entered an initial scheduling order setting August 1, 2005 as

the parties' deadline to amend pleadings, and September 30, 2005 as the deadline for completing

fact discovery.

The parties thereafter agreed to amend the scheduling order, including its pleading

amendment deadline, three times.  Pursuant to a scheduling order entered on November 6, 2006

(the "**November 2006 Scheduling Order**"), January 2, 2007 was set as the final deadline for

amendment of pleadings, and it expired on that date.

After the November 2006 Scheduling Order, several other amended scheduling orders

were entered into which extended discovery and other deadlines, but these amendments made no

mention of the parties' deadline to amend pleadings.  At no time before the January 2, 2007

deadline did FPL Group seek to amend its Answer, either by agreement or by motion.

---

[3]     The Trust was formed under the Debtors' plan of reorganization, which was confirmed in January 2007.
From then on, the Trust took over the stewardship of the litigation.  Hereafter, for simplicity, the plaintiff
side of this adversary proceeding is simply referred to as the Trust.

From late 2004 throughout 2006, the parties served initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1), requests for documents, and requests for admissions and interrogatories. In December 2005, FPL Group served responses to the Trust's requests for admissions, and in early 2006, FPL Group produced documents. The Trust produced its documents in 2007.

Principally because the Trust's counsel was so heavily occupied with other litigation (including, most significantly, the Trust's claims against commercial and investment banks, and others, arising from their participation in the "co-borrowing" arrangements that triggered Adelphia's bankruptcy), this litigation proceeded slowly. In October 2010, the parties agreed to another amended scheduling order in this adversary proceeding under which the parties currently operate. That scheduling order set May 12, 2011 as the date for the close of fact discovery, required parties to notify the Court of their intention to file dispositive motions by July 6, 2011, and set a trial date of September 16, 2011.

Predecessor Counsel represented FPL Group in this adversary proceeding from at least the date of the Answer, September 17, 2004, through entry of the most recent scheduling order in October 2010. Thereafter, FPL Group's present counsel, the law firm of Skadden, Arps, Slate, Meagher, and Flom LLP ("**New Counsel**"), replaced Predecessor Counsel. New Counsel contacted the Trust and requested an extension of a Fed. R. Civ. P. 30(b)(6) deposition that was scheduled for the following week. The Trust agreed to this extension, and proposed the date of January 10, 2011 for the Rule 30(b)(6) deposition in an email.

On December 10, 2010, also by email, New Counsel agreed to the January 10, 2011 date for the deposition. New Counsel's email further stated:

> We are preparing an Amended Answer to add an affirmative defense under Bankruptcy Code Section 546(e). We plan to serve the Amended Answer well in advance of the deposition, so that you will have the opportunity to

4

> examine the deponent on that issue if you choose to do so.
> You will also have the opportunity to seek document
> discovery on that issue.  Please let me know whether
> plaintiff will consent to the proposed amendment.[4]

On December 29, 2010, having not received a response from the Trust's counsel, New

Counsel sent a follow-up email.  Later that day, the Trust's counsel responded, stating "The

Trust does not consent to your request to amend your answer to assert a new affirmative

defense."[5]

On January 7, 2011, New Counsel produced 33 pages of additional documents, some of

which related to FPL Group's new Safe Harbor Defense.  FPL Group contends that only five

pages, and only six lines of text, related to the Safe Harbor Defense.[6]  Getting one's arms around

such a small quantity of documents would plainly not take very long.  But FPL Group has not

contended that it came to learn of the facts supporting the Safe Harbor Defense only after the

January 2007 deadline, or, especially, in 2011, four years later.

On Monday, January 10, 2011, the Trust took the deposition of FPL Group's designated

Rule 30(b)(6) witness.  During that deposition, the witness was questioned about the documents

produced on January 7 that related to the Safe Harbor Defense.  The Trust also questioned the

witness with respect to the involvement, if any, of a brokerage firm in the transaction.

On January 20, 2011, FPL Group filed its motion to amend the Answer, which included a

copy of the proposed amended Answer.  Prior to this filing, the Trust had not received a copy or

draft of the proposed amended Answer.

In a declaration in support of the Motion to Amend, FPL Group's New Counsel stated:

---

[4]      Declaration of George Zimmerman, dated Jan. 20, 2011 ("**Zimmerman Decl**. **I**"), Exh. H.

[5]      Zimmerman Decl. I, Exh. I.

[6]      Declaration of George Zimmerman, dated Feb. 22, 2011 ("**Zimmerman Decl**. **II**"), ¶ 7.

I had a discussion with Defendants' Predecessor Counsel regarding their reasons for not having moved for leave to amend the Answer to assert the Section 546(e) defense. They explained their view that Section 546(e) deprives Plaintiffs of the standing conferred upon them by Section 544(b) of the Bankruptcy Code to assert the fraudulent conveyance claim, which, in turn, deprived the Court of jurisdiction to hear the case. Thus, it was Predecessor Counsel's view that Section 546(e) was not an affirmative defense that was required to be plead[*sic*], but rather, was a non-waivable standing and jurisdiction argument that can be made by motion at any time. As explained to me, their view was informed by *In re Cybergenics Corp. v. Chinery*, 226 F.d [*sic*] 237, 241 (3d Cir. 2009) and *In re Mendez*, No. 05-62634-A-7, 2008 WL 597280, at *4-6 (Bankr. E.D. Cal. Feb. 29, 2008).[7]

<u>Discussion</u>

*1. The Starting Point: Rule 15(a)*

Fed. R. Civ. P. 15 is applicable in bankruptcy adversary proceedings like this one under Fed. R. Bankr. Pro. 7015. Rule 15(a)(1) provides that a party may amend its pleadings once as a matter of course within 21 days after serving it or, if the pleading is one to which a responsive pleading is required, within 21 days after service of a responsive pleading or certain Rule 12 motions, whichever is earlier. Rule 15(a)(2) then provides that thereafter, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Of course, FPL Group here sought to amend its answer well after any of the 21 day periods provided in Rule 15(a)(1). Therefore, Rule 15(a)(2) applies.[8]

---

[7]    Zimmerman Decl. II, ¶ 5. Though Mr. Zimmerman's account of what he was told is of course hearsay, the Trust's counsel did not object to its consideration. The Court doubts that New Counsel thought that describing Predecessor Counsel's thought processes would bolster its client's position on its motion. The Court reads this statement instead as simply arguing the matter with candor.

[8]    Some of the cases cited in this decision cite earlier versions of Fed. R. Civ. P. 15 and 16. The 2007 Amendments to Rules 15 and 16 were merely stylistic. *See* Notes to the 2007 Amendments. In the 2009 Amendments, "Rule 15(a)(1) [was] amended to make three changes in the time allowed to make one

"[W]hether a motion to amend should be granted or denied must depend upon the sound judicial discretion of the trial court."[9]  In the context of cases that did not involve failures to comply with the requirements of scheduling orders—and thus did not present Rule 16(b) issues in addition to Rule 15(a) issues—the Second Circuit has held that a Rule 15(a) motion "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party."[10]  The burden of showing prejudice or bad faith is on the non-movant, but "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice."[11]  Conversely, the Circuit has further stated—though again in a case not involving the competing demands of Rule 16(b) doctrine, discussed below—that "[m]ere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."[12]

Accordingly, at least until doctrine under Rule 16(b), discussed below, is also considered, determining the extent of prejudice is of great importance.  "In determining what constitutes 'prejudice,' we consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a

---

amendment as a matter of course."  *See* Notes to the 2009 Amendments.  No change was made to Rule 15(a)(2) or to Rule 16 in the 2009 Amendments.  Both parties agree that Rule 15(a)(1), either in its pre or post-2009 Amendments form, is not applicable here, and that only Rule 15(a)(2) is relevant.  Therefore, the Court does not consider it material that some of the decisions relied on here cited earlier versions of these Rules.

[9]   *Evans v. Syracuse City School District*, 704 F.2d 44, 47 (2d Cir. 1983) ("***Evans***").

[10]   *See Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir. 1987); *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) ("***Fluor***").

[11]   *Block v. First Blood Associates*, 988 F.2d 344, 350 (2d Cir. 1993) ("***Block***") (citing *Evans*, 704 F.2d at 47).

[12]   *Block*, 988 F.2d at 350 (quoting *Fluor,* 654 F.2d at 856).

7

timely action in another jurisdiction."[13]  "[T]he fact that one party has spent time and money

preparing for trial will usually not be deemed [sufficient] prejudice . . . Rather, we will be most

hesitant to allow amendment where doing so unfairly surprises the non-movant . . . ."[14]

Here, the Court determines that permitting Defendant FPL Group to amend its answer to

add this defense will prejudice the Plaintiff Trust somewhat, but only modestly.

The Trust asserts that the addition of this defense would result in undue prejudice because

it would force the Trust to engage in another wave of discovery—including additional document

requests, a re-deposition of Defendant's Rule 30(b)(6) witness, and retention of experts.[15]  The

Court agrees that extra discovery would be required, but believes that the extra discovery would

be relatively modest.  The Safe Harbor Defense would in substance be a legal one, which could

be established or disproven principally by delivery of a relatively modest number of documents.

If the Trust wished to show that any financial institutions through which the repurchased stock

and payment passed were merely conduits, and that avoidance would not cause any displacement

in the securities markets in any way, that might mean a little extra in the way of discovery, but

the Court does not believe that it would be significant.  The Court is not convinced that

significant additional discovery would in fact be necessary, or that, if undertaken, it would have a

material effect on the timing of the determination of this controversy.

Looking to another factor, the Court is doubtful that assertion of a Safe Harbor Defense

would result in unfair surprise to the Trust.  The Trust here has experienced counsel, and it is fair

to assume that the Trust's counsel's experience comports with that of the Court.  This Court has

---

[13]   *Block*, 988 F.2d at 350.

[14]   *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000) (noting that in *Block*,
"we permitted defendants to assert an affirmative defense in their motion for summary judgment four years
after the complaint was filed because plaintiffs had knowledge of the facts giving rise to the defense").

[15]   *See* Plaintiff's Opp. Br., at 15-19.

seen, over the years, that in all or substantially all of the cases in which a defendant in an

avoidance action can claim that there was a transaction involving securities, the defendant

contends that the challenged transaction was a "settlement transaction," absolving the defendant

of the liability it would otherwise have—irrespective of "the displacement caused in the …

securities markets,"[16] the purpose for which the safe harbor provisions were enacted.  Defendants

in avoidance actions regularly raise the defense.  The Court does not think that anyone would be

surprised when still another defendant does likewise.

The most significant harm that the Trust would suffer would be its inability to enjoy a

victory as to the Safe Harbor Defense before judicial consideration of the defense's merits.  That,

of course, is not cognizable prejudice under Rule 15(a).[17]  For these reasons, the Court finds the

Trust will be only modestly prejudiced if FPL Group's motion is granted.

Considering only Rule 15(a) doctrine, other factors, on balance, do not cause the Court to

be inclined to deny leave to amend.  Though the Court looks carefully at efforts to invoke the

Safe Harbor Defense in instances in which trading markets, or brokers that clear transactions, are

unaffected, the Court is not in a position to say that the proposed amendment would be futile.

The extent to which the Section 546(e) Safe Harbor should apply in avoidance actions that do not

involve risks to the trading markets or to the securities clearing process is a matter of ongoing

debate amongst the courts and bankruptcy community.

Finally, the Court considers the "bad faith" factor.  It is at least arguable that FPL

Group's earlier strategy in laying low with its Safe Harbor Defense constitutes grounds for a

---

[16]     *See Enron*, n.2 above.

[17]     *See In re Perry H. Koplik & Sons, Inc.,* 2007 WL 3076921, at *5 (Bankr. S.D.N.Y. Oct. 18, 2007) (Gerber
J.) (granting leave to amend adversary proceeding complaint, though not in a case where time to amend
pleadings, under scheduling order, had passed; "while any defendant would no doubt welcome the
opportunity to be spared the need to defend additional claims by reason of his opponent's misstep, the loss
of the windfall of securing victory before consideration of the merits, at least in this factual context, cannot
be regarded as legally cognizable prejudice").

9

finding of bad faith, though the Court does not believe that FPL Group's request to raise the

defense explicitly now, or the conduct of New Counsel, can be regarded as such.  But the Court

does not need to decide that issue definitively, because FPL's Group strategy is, at the least,

relevant to the "good cause" inquiry under Rule 16(b), which applies here because FPL's motion

to amend was untimely under the governing scheduling order.

## 2.  *The Need to Consider Rule 16(b)*

"Although Rule 15(a) governs the amendment of pleadings," where a scheduling order

has been entered, "Rule 16(b) also may limit the ability of a party to amend a pleading if the

deadline specified in the scheduling order for amendment of the pleadings has passed."[18]  Rule

16(b) provides that a party may obtain a modification of a scheduling order "only for good cause

and with the judge's consent."[19]

The November 2006 Scheduling Order in this action set January 2, 2007 as the deadline

for amendment of pleadings, and FPL Group did not move to amend its Answer until January 20,

2011, four years later.  Plainly, then, FPL Group's motion is grossly untimely under the

Scheduling Order.

Whether good cause exists turns on the "diligence of the moving party."[20]  The court may

modify a scheduling order if it determines that "the deadline cannot reasonably be met despite

the diligence of the party seeking the extension."[21]  "Examples of a party's failure to act with

---

[18]   *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007) ("***Kassner***").  See also *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) ("***Parker***") (holding that "district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause").

[19]   Fed. R. Civ. P. 16(b)(4).

[20]   *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009) ("***Holmes***").

[21]   *Parker*, 204 F.3d at 340.

sufficient diligence include basing a proposed amendment on information that the party knew, or should have known, in advance of the deadline."[22]

Here FPL Group has failed to show that despite reasonable diligence, it was unable to meet that January 2007 deadline. There is no contention that FPL Group lacked any information relevant to the Safe Harbor Defense before the January 2007 deadline, or that any new facts were discovered after that time. In fact, the Court does not see how any such contention could be made, since the mechanics by which FPL Group received its stock redemption payment necessarily would have been known to it.

Moreover, FPL Group has acknowledged that Predecessor Counsel made an *affirmative decision* not to include the Safe Harbor Defense in its Answer—because Predecessor Counsel believed that section 546(e) was "not an affirmative defense that was required to be plead [*sic*], but rather, was a non-waivable standing and jurisdiction argument that can be made by motion at any time."[23] Assuming, as FPL Group has disclosed (as candor required it to do), that Predecessor Counsel was aware of the Safe Harbor Defense and decided to omit it from the Answer for tactical reasons (as contrasted, for example, to simply missing the issue),[24] and that

---

[22]    *Fuller v. Interview, Inc.*, No. 07 Civ. 5728, 2011 U.S. Dist. LEXIS 21083, at *7, 2011 WL 724533, at *3 (S.D.N.Y. Feb. 25, 2011) (Freeman, M.J.) (citing *Parker*, 204 F.3d at 340). *Cf. Emzymotec Ltd. v. NBTY, Inc.*, 754 F.Supp.2d 527, 537 (E.D.N.Y. 2010) (Spatt, J.) (finding that good cause for leave to amend complaint to add breach of contract claim after deadline to amend pleadings could be shown if party moving for leave to amend learned of alleged breaches of contract only during discovery).

[23]    Zimmerman Decl. II, ¶ 5.

[24]    If Predecessor Counsel had simply missed the issue, the Court would not be as offended as it is here, but the conclusion would be the same. Attorney inadvertence does not constitute good cause under Rule 16(b). *See Carnite v. Granada Hosp. Group, Inc.*, 175 F.R.D. 439, 448 (W.D.N.Y. 1997). *See also Davidowitz v. Patridge*, No. 08 Civ. 6962, 2010 U.S. Dist. LEXIS 42322, at *10, 2010 WL 1779279, at *4 (S.D.N.Y. April 23, 2010) (oversight by prior counsel is not an excuse for delay because "litigants are generally 'bound by the professional conduct of the attorneys they choose to represent them'"); *Glover v. Jones*, No. 05-CV-6124, 2006 U.S. Dist. LEXIS 80667, at *14, 2006 WL 3207506, at *4 (W.D.N.Y. Nov. 3, 2006) (rejecting argument that change in counsel constituted Rule 16 good cause because "[t]o hold otherwise would be to allow a party to manufacture 'good cause' at any time simply by switching counsel").

11

FPL Group's New Counsel (understandably)[25] does not wish to continue with that strategy, it still is clear that the failure to timely seek leave to amend to raise the defense is not supported by "good cause," and cannot be regarded as consistent with reasonable diligence.   FPL Group could clearly have raised the Section 546(e) Safe Harbor in its original answer, filed in October 2004, or sought leave to do so in the next several years, up to January 2007.

Apart from the inaction itself and the lack of any showing of good reason for it, the Court additionally thinks it should affirmatively find an absence of "good cause" when considering the underlying tactical decision.   In substance, FPL Group, by its agent, Predecessor Counsel, intentionally thought it could "lay low" and hold back on a defense upon which it presumably later would rely.   That was unfair to FPL Group's adversary, and is offensive to the Court.   Was FPL Group planning to go through the whole litigation, or even any material part of it, and then claim that all of the prior proceedings were a nullity, by reason of a previously unstated subject matter jurisdiction objection?   Did FPL Group regard deadlines for pleadings under scheduling orders to be of no significance, and want a secret hedge against dealing with the issues on their merits?[26]   The Court is not of a mind to reward tactics of that character, or, more specifically, to determine that FPL Group's decision now to discontinue those tactics constitutes "good cause."

---

[25]    The Court has some difficulty subscribing to the premise upon which that tactical decision rested, since standing goes much more to the ownership of the cause of action (and whether the plaintiff was injured by the conduct complained of) than it does to circumstances under which otherwise actionable conduct would be absolved from civil liability.  *See, e.g., Buchwald v. The Renco Group., Inc. (In re Magnesium Corporation of America),* 399 B.R. 722, 757-760 (Bankr. S.D.N.Y. 2009) (analyzing factors that determine whether standing would exist, and ultimately concluding that trustee had standing to assert claims for breach of fiduciary duty, but not for defrauding purchasers of the debtor's securities).  But the important thing here is not the strength or weakness of the analysis under which the tactical choice was made.  It is simply the fact that a tactical decision not to raise the defense had been made.

[26]    Prepetition redemptions of stock by chapter 11 debtors tend to be matters of concern to this Court.  But there here are issues as to the merits of this adversary proceeding apart from the Safe Harbor Defense— most significantly with respect to solvency in January 1999 (three years prior to the Debtors' chapter 11 filing), and with respect to the possible significance if the payment on the stock repurchase was made, on behalf of an insolvent Debtor, by Adelphia Cablevision LLC, referred to earlier in the chapter 11 case as the "Bank of Adelphia," the instrumentality through which many payments on behalf of Adelphia entities were made.  Each side would have to address *Adelphia Recovery Trust v. Bank of America, N.A.*, 2011 U.S.

For these reasons, the Court finds that FPL Group failed to act with any reasonable diligence, and cannot be regarded as having shown "good cause" for its failure to raise the defense sooner, or for leave to amend now.

### 3. Harmonizing Application of Rules 15(a) and 16(b)

FPL Group points out that under Rule 15(a)(2) doctrine, prejudice has traditionally been a critical factor. And it goes on to argue that prejudice to the Trust has not been shown.[27] Thus, it argues, even if this Court were to find a lack of diligence on the part of FPL Group, leave to amend should still be granted.

The Trust disagrees. It argues that when a motion to amend is made after the deadline imposed under a scheduling order, a court can grant leave to amend only upon a finding of good cause; that reasonable diligence is the primary, if not sole, factor for establishing good cause; and that the Court can consider prejudice to the nonmoving party *only after* the Rule 16(b) diligence threshold has been met.

In support of their respective positions, the Trust and FPL Group each note *Parker* and *Kassner*,[28] two Second Circuit decisions. In *Parker,* the Second Circuit first addressed the showing required of a party moving to amend its pleading pursuant to Rule 15(a)(2) after the deadline for amendment of pleadings in a scheduling order has passed. The Circuit observed that

---

Dist. LEXIS 39139, at * 22, 2011 WL 1419617 at *2 (S.D.N.Y. Apr. 7, 2011) (McKenna, J.) and *In re Adelphia Communications Corp. Securities and Derivative Litigation*, 2011 WL 2581779 at *2 (S.D.N.Y. Jun. 27, 2011) (McKenna, J.) (granting summary judgment to the defendants in each case on constructive fraudulent conveyance claims where payments to the transferees were made by Adelphia Cablevision, LLC), decisions as to which the Court now expresses no views.

Those issues can and should be determined on their merits. But at the risk of stating the obvious, FPL Group could not, consistent with this Court's scheduling orders, address those and the other relevant issues on the merits and then, if the outcome as to them wasn't to its liking, additionally argue that, because of unwaivable standing and subject matter jurisdiction deficiencies, FPL Group should win anyway.

[27]   Ultimately, the Court has here found that there would be some prejudice, but that the prejudice would be modest. In light of the analysis that follows, the Court does not need to decide whether that distinction would make a difference.

[28]   *Parker*, 204 F.3d at 326; *Kassner*, 496 F.3d at 229.

13

"[s]everal circuits have ruled that the Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings."[29]  One of the examples cited was a decision from the Eleventh Circuit, in which the Eleventh Circuit stated "if we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."[30]

The *Parker* court also cited approvingly a Ninth Circuit's decision,[31] speaking to the importance of scheduling orders:

> Disregard of the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.  Rule 16 was drafted to prevent this situation[,] and its standards may not be short-circuited by an appeal to those of Rule 15.[32]

Thus in *Parker*, the Second Circuit concluded:

> We now join these courts in holding that despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause.[33]

Six years later, in *Kassner*, the Second Circuit addressed whether Rule 16(b) also applied when the party moving to amend would be entitled to amend as a matter of course under Rule 15(a)(1).  The *Kassner* court held that "amendment of a pleading as a matter of course pursuant to Rule 15(a) is subject to the district court's discretion to limit the time for amendment of the

---

[29]     *Parker*, 204 F.3d at 340.

[30]     *Id.* (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (per curiam)).

[31]     *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 610 (9th Cir. 1992) ("**Mammoth Recreations**").

[32]     *Parker*, 204 F.2d at 340 (quoting *Mammoth Recreations*).

[33]     *Id.*

14

pleading in a scheduling order issued under Rule 16(b)."[34]  The Circuit remanded to the district

court on other grounds, but instructed that "[o]n remand, the district court must exercise its

discretion under Rule 16(b) to determine whether the scheduling order should be modified so as

to allow an amended complaint."[35]  Citing *Parker*, the *Kassner* court clarified that while "the

primary consideration is whether the moving party can demonstrate diligence," "[i]t is not,

however, the only consideration"—and that in the exercise of its discretion under Rule 16(b), the

district court "also may consider other relevant factors including, in particular, whether allowing

the amendment of the pleading at this stage of the litigation will prejudice defendants."[36]

Then, in its 2009 decision in *Holmes*, three years after *Kassner*, the Second Circuit once

more considered the competing interests reflected in Rules 15(a) and 16(b).  There the district

court had denied leave to amend after determining that the plaintiffs had not been diligent, and

had not shown good cause for their failure to include the proposed new claims in earlier versions

of the complaint.[37]  The Second Circuit reviewed for abuse of discretion and explained that "the

lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must

be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not

be modified except upon a showing of good cause.'"[38]  It concluded:

> We agree with the District Court's assessment of plaintiffs'
> actions. The record is devoid of evidence supporting
> plaintiffs' contention that good cause existed for the
> District Court to modify its scheduling order. Accordingly,

---

[34]    *Kassner*, 496 F.3d at 244.

[35]    *Id.*

[36]    *Id.*

[37]    *Holmes*, 568 F.3d at 334.

[38]    *Id.* at 334-35 (citing *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (quoting older versions
of Federal Rules of Civil Procedure 15(a) and 16(b), and finding that district court did not abuse discretion
in denying motion to amend complaint where "plaintiffs delayed more than one year before seeking to
amend" and "when the motion was filed, discovery had been completed and a summary judgment motion
was pending")).

we affirm the District Court's denial of Holmes's motion to amend.[39]

As in *Parker*, the Second Circuit in *Holmes* decided that applying Rule 16(b), and requiring a showing of good cause, was not an abuse of discretion by the district court. *Holmes* teaches that the interests embodied in Rules 15(a)(2) and 16(b) must be *balanced*,[40] but is not otherwise dispositive here.

Under the teaching of those cases, particularly *Parker* and *Holmes*, trial courts can deny leave to amend if the Rule 16(b) concerns are serious enough, even with the "lenient standard of Rule 15(a),"[41] and even if Rule 15(a)(2) analysis, considered in isolation, would suggest granting leave to amend. [42] For reasons discussed above and below, once this Court undertakes a balancing of the needs and concerns of Rules 15(a) and 16(b), its decision to deny leave to amend, under the facts presented here, becomes a relatively easy one.

Many decisions of trial courts—which are mindful, as this Court is, of the importance of scheduling orders—speak to the importance of finding that the moving party has been diligent in order to grant leave to amend.[43] In *Sokol,* for instance, Chief Judge Wood of the district court

---

[39]   *Holmes*, 568 F.3d at 335. After *Holmes*, it would appear plain that decisions on untimely motions for leave to amend will be fact driven, and that trial courts will not be compelled to conclude, as a matter of law, either that Rule 15(a) concerns, on the one hand, or Rule 16(b) concerns, on the other, necessarily must prevail.

[40]   *See* 568 F.3d at 334 (using that exact word).

[41]   *Parker*, 204 F.3d at 340.

[42]   The Court assumes, without deciding, that the converse likewise is true. It has been observed, properly in this Court's view, that "'the Court [of Appeals] left open the possibility that amendments could be permitted even where a plaintiff had not been diligent in seeking an amendment,' inasmuch as 'both Rules should be considered simultaneously' and the factors balanced." *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 U.S. Dist. LEXIS 29267, at *33, 2010 WL 1257803, at *10 (E.D.N.Y. Mar. 26, 2010) (Mann, M.J.) (citing *Castro v. City of New York*, 2010 U.S. Dist. LEXIS 19935, at *6, 2010 WL 889865, at *2 (E.D.N.Y. Mar. 6, 2010) (Reyes, M. J.) (acknowledging that "there may be may be situations in which amendments should be permitted even in the absence of diligence" but declining to grant leave to amend where movant did not offer any cause)).

[43]   *See, e.g., Sokol Holdings, Inc. v. BMB Munai, Inc.*, No. 05 cv 3749, 2009 U.S. Dist. LEXIS 100478, at *13, 2009 WL 3467756, at *5 (S.D.N.Y. Oct. 28, 2009) ("***Sokol Holdings***") (Wood, C.J.); *Compania*

overruled objections to Magistrate Judge Freeman's memorandum and opinion denying leave to

amend the complaint.  Judge Wood rejected the plaintiff's argument that leave to amend should

be permitted because the defendants would not be prejudiced if the amendment were allowed—

stating "*The standards of Rule 16(b) must be met first* and cannot be short-circuited by an appeal

to those Rule 15."[44]  She continued:

> The Magistrate Judge found that the Plaintiff's failure to
> comply with the Court's scheduling order and to show
> good cause for modification of that order precludes the
> amendments in proposed Counts VI through X pursuant to
> Rule 16(b).  The Court finds that the Magistrate Judge's
> analysis and conclusion are correct.  Consideration of
> prospective prejudice to Defendants, or any other Rule
> 15(a) factor …, is therefore not warranted.[45]

Similarly, in *Compania Embotelladora*, Judge Rakoff of the district court denied leave to

amend because the moving party failed to show diligence in attempting to meet the deadline set

by the Court.[46]  In comments with particular relevance here, he noted that "courts [had] found

good cause to be lacking where, as here, the moving party 'had knowledge of the facts and

circumstances in the case for a period of several years and could have made their motion within

---

*Embotelladora del Pacifico v. Pepsi Cola Co.*, 607 F.Supp.2d 600, 602 (S.D.N.Y. 2009) ("***Compania Embotelladora***").

[44]    *Sokol Holdings*, 2009 U.S. Dist. LEXIS 100478, at *16, 2009 WL 3467756, at *5 (quoting *Nairobi Holding Ltd. v. Brown Brothers Harriman & Co*, 2006 U.S. Dist. LEXIS 54171, at *9, 2006 WL 2242596, at *3 (S.D.N.Y. Aug. 3, 2006) (McKenna, J.) (overruling objections to determination of Magistrate Judge Katz denying leave to file an amended complaint)) (emphasis added by Judge Wood).

Those cases, along with other authority at the district court level decided after *Parker* but before *Holmes*, can be read as holding that the Rule 16(b) "good cause" requirement must first be met before Rule 15(a) concerns can be considered.  *See also NAS Electronics., Inc. v. Transtech Electronics. PTE Ltd.*, 262 F.Supp.2d 134, 150 (S.D.N.Y. 2003) (Koeltl, J.) ("***NAS Electronics***") (denying leave to amend complaint, stating that "[b]efore leave is granted [pursuant to Rule 15(a)], a motion to amend the pleading must satisfy the terms of [the] Court's scheduling order entered pursuant to Fed.R.Civ.P. 16(b)," and citing *Parker*).  Even if that no longer is true after *Holmes* expressed the need to engage in a balancing test, these decisions inform the judgment of trial courts deciding similar issues, emphasizing the importance of compliance with scheduling orders.

[45]    *Sokol Holdings*, 2009 U.S. Dist. LEXIS 100478, at *17, 2009 WL 3467756, at *6.

[46]    *Compania Embotelladora*, 607 F.Supp.2d at 602.

17

the specified time period.'"[47]  Although he went on to find that the motion to amend also failed

under Rule 15(a) on grounds of futility and undue delay by the movants, Judge Rakoff made it

clear that the lack of good cause alone was sufficient to deny leave to amend.[48]

And in *NAS Electronics,* Judge Koeltl denied the plaintiffs' motion to amend their

complaint, stating that "[t]he plaintiffs had knowledge of the facts and circumstances in the case

for a period of several years and could have made their motion within the specified time period.

This lack of diligence and absence of good cause for such a delay requires that the plaintiffs'

motion to amend be denied as untimely."[49]

And still more decisions, from magistrate judges in this district, who have considerable

experience in dealing with issues of this character, hold likewise.  In two recent decisions,

Magistrate Judge Maas treated the good cause requirement as mandatory,[50] and noted that

"[a]lthough a court also may consider whether the amendment will prejudice the non-moving

party, *the mere absence of prejudice is not sufficient to satisfy the good cause requirement of*

*Rule 16(b).*"[51]  And Magistrate Judge Fox stated in recent decisions that "*[a]fter the moving*

party demonstrates diligence under Rule 16, the Rule 15 standard applies to determine whether

---

[47]   *Id.* (quoting *NAS Electronics*).

[48]   *See id.* at 604 ("For all of the foregoing reasons (*any one of which is alone sufficient*)," the movant's
       motion for leave to file an amended complaint was denied (emphasis added)).

[49]   *NAS Electronics*, 262 F.Supp.2d at 150-51.

[50]   *See Oppenheimer & Co. Inc. v. Metal Management, Inc.*, No. 08 Civ. 3697, 2009 U.S. Dist. LEXIS 71608,
       2009 WL 2432729 (S.D.N.Y. July 31, 2009) ("***Oppenheimer & Co***"); *International Media Films, Inc. v.
       Lucas Entertainment, Inc.*, 2008 WL 781823 (S.D.N.Y. Mar. 20, 2008).

[51]   *Oppenheimer & Co*, 2009 U.S. Dist. LEXIS 71608, at * 5, 2009 WL 2432729, at *2 (citing *Estate of
       Ratcliffe v. Pradera Realty Co*., No. 05 Civ. 10272, 2007 U.S. Dist. LEXIS 78070, at *1, 2007 WL
       3084977, at *1 (S.D.N.Y. Oct.19, 2007) (Keenan, J.) ("***Ratcliffe***")) (emphasis added).  *See also Augustine
       v. AXA Financial, Inc.*, No. 07 Civ. 8362, 2008 U.S. Dist. LEXIS 95505, at *5, 2008 WL 5025017, at *2
       (S.D.N.Y. Nov. 24, 2008) (Sweet, J.) (quoting same sentence in *Ratcliffe*).

the amendment is proper"[52]—underscoring, once more, the importance of the diligence requirement.

FPL Group argues that all of these cases have no bearing here because in all them, at the time the movant sought leave to amend, discovery had already been completed and, in some, motions to dismiss or motions for summary judgment had already been filed.[53]  Therefore, FPL Group asserts, attempting to contrast those cases to this one, "the facts of those cases establish the obvious prejudice that would occur if the motion were granted."[54]

But even if FPL Group is right about the timing of the motions to amend in those cases, its observation is not dispositive.  In each of those many decisions, the court reasoned that leave to amend should be denied either primarily or solely based upon a finding that the moving party had failed to act with reasonable diligence.  Those courts did not rest their decisions on whether or not the non-moving party would suffer prejudice.  The reason that the judges in those cases, as FPL Group argues, "went out of their way to make the point that discovery was completed"[55] was that the timing of the motions to amend was relevant to whether the movant was diligent.  While the timing of the motion may also have been relevant to whether the non-moving party would be prejudiced, such an inquiry was not a material element in the courts' reasoning in those decisions.

Ultimately, the Court does not need to, and does not, rule that Rule 16(b) doctrine *always* trumps the doctrine under Rule 15(a)(2).  The Court determines, rather, consistent with *Holmes*,

---

[52]    *De Malmanche v. Glenrock Asset Management Associates, L.P.*, No. 07 Civ. 10940, 2011 U.S. Dist. LEXIS 28632, at *15, 2011 WL 990165, at *5 (S.D.N.Y. Mar. 16, 2011); *Grant v. Citibank*, No. 10 Civ. 2955, 2010 U.S. Dist. LEXIS 128824, at *21, 2010 WL 5187754, at *7 (S.D.N.Y. Dec. 6, 2010) (emphasis added).

[53]    *See* 2/23/11 Hr'g Tr. at 46-47; Defendants' Reply Br. at 5-6.

[54]    Defendants' Reply Br. at 5.

[55]    2/23/11 Hr'g Tr. at 46.

that a *balancing* of the needs and concerns of the two Rules should be undertaken.  And under

the facts presented here, that balancing tips decidedly in favor of denying leave to amend.  Here

failure to comply with the scheduling orders did not result from ignorance or excusable neglect.

The sole reason for noncompliance with this Court's scheduling orders was a tactical choice—

and an offensive one, at that.  Here, even with only modest prejudice to the nonmoving party, the

Court will not reward the knowing noncompliance with this Court's scheduling orders by now

granting leave to amend.

       The motion is denied.

SO ORDERED.

Dated: New York, New York                 **_s/Robert E. Gerber_**
      July **_13_**, 2011              United States Bankruptcy Judge